HARRISON L. WINTER, Chief Judge:
 

 Bryan L. Beavan, a coal miner for thirty-six years, appeals from a decision of the Benefits Review Board denying his claim for black lung disability payments under 30 U.S.C. §§ 901-45. We reverse and direct an award of benefits.
 

 
 *690
 
 I.
 

 Beavan initially filed an application for black lung benefits with the Department of Labor in February of 1975. The Department found that Beavan was eligible for benefits and that Bethlehem Mines Corporation, Beavan’s former employer, was responsible for the payment of those benefits. At Bethlehem’s request, the claim was referred to the Office of Administrative Law Judges for a formal hearing. After a hearing in August of 1980, the AU issued a decision and order finding Beavan eligible for black lung benefits commencing in August 1977. Bethlehem appealed to the Benefits Review Board which reversed the award of benefits in August of 1983. The Board held that the medical evidence in the record established “as a matter of law” that Beavan was able to do his usual coal mine work. 20 C.F.R. 727.203(b)(2).
 

 Beavan underwent two physical examinations in connection with his application for black lung benefits. The first examination was conducted on September 1, 1978 by Dr. Leroy Lapp, Chief of the Pulmonary Disease Section of West Virginia University Hospital. A chest x-ray taken at that time was interpreted by Dr. N.J. Jennings, a Board-certified radiologist and “B-reader”, as positive for pneumoconiosis. Beavan performed a ventilatory function study which resulted in an FEVi of 2.75 L/S and an MW of 114 L/M. Patient cooperation was assessed as poor. No arterial blood gas study was conducted by Dr. Lapp. On the basis of the test results, physical symptoms, and Beavan’s occupational and medical history, Dr. Lapp diagnosed probable pneumoconiosis. Lapp also concluded, however, that Beavan’s ventilatory capacity was “within normal limits” and he was therefore not disabled.
 

 The other physical examination of Beav-an was conducted by Dr. Vaughn Strimlan in July of 1979. Strimlan found no evidence of coal workers’ pneumoconiosis by chest x-ray. Ventilatory function studies, however, showed a severe obstructive pattern. The FEVi was reported as 1.17 L/S (36% of predicted normal) and the MW was reported as 41 L/M (29% of predicted normal). An arterial blood gas study revealed a pC02 of 35 and a p02 of 64. The blood gas study results alone are sufficient to establish a presumption of total disability due to pneumoconiosis arising out of coal mine employment under 20 C.F.R. 727.203(a)(3). Dr. Strimlan concluded that Beavan had a Class IV AMA respiratory impairment of 50 to 70 percent. According to Dr. Strimlan, however, Beavan’s disability was attributable to his history of cigarette smoking.
 

 Dr. Strimlan revised his conclusions in a letter dated July 14, 1980. Dr. Strimlan stated that the ventilatory function studies performed by Beavan during the examination he had conducted a year earlier were “somewhat variable and would suggest less than maximal effort.” Dr. Strimlan noted, however, that the technician conducting the test observed good patient cooperation and effort. Dr. Strimlan concluded, on the basis of his review as well as the results of the ventilatory function study conducted by Dr. Lapp in September of 1978, that Mr. Beavan displayed no evidence of a respiratory impairment. Dr. Strimlan did not address the remainder of his previous report, in particular the arterial blood gas test results.
 

 The only other medical evidence bearing on the issue of whether Beavan is disabled by pneumoconiosis is a report from Dr. George Kress dated April 17, 1980. Dr. Kress based his evaluation on a review of the reports of Drs. Strimlan and Lapp. Kress concluded that there was no radio-graphic report suggesting the presence of pneumoconiosis and that Beavan’s best efforts on the ventilatory function tests showed no evidence of impairment. Finally, Kress speculated that the hypoxemia evidenced by the arterial blood gas tests might be caused by obesity.
 

 The AU invoked a rebuttable presumption of total disability due to pneumoconio-sis arising out of coal mine employment on the basis of x-ray evidence establishing the presence of the disease as well as the arterial blood gas tests. 20 C.F.R. 727.203(a)(1)
 
 *691
 
 and (3). He rejected Bethlehem’s contention that the medical evidence established that Beavan was able to do his usual coal mine work, finding the reports of Drs. Lapp and Strimlan to be unsupported by documentation and, thus, insufficient to rebut the presumption. 20 C.F.R. 727.-203(b)(2). The AU also rejected the suggestion that Beavan’s pulmonary disability was attributable to smoking, finding that Dr. Strimlan’s reports did not establish that the disability did not arise, at least in part, from coal mine employment. 20 C.F.R. 727.203(b)(3). In addition, the AU reasoned that Dr. Strimlan’s report did not meet the foundational requirements of the rebuttal standard prescribed by the
 
 Benefits Review Board in Blevins v. Peabody Coal Co.,
 
 1 B.L.R. 1-1023 (1978),
 
 rev’d on other grounds sub nom. Peabody Coal Co. v. Director, OWCP,
 
 644 F.2d 886 (6 Cir.1981).
 

 The Benefits Review Board reversed the award of benefits holding that the medical evidence established as a matter of law that Beavan was capable of doing his usual coal mine employment. 20 C.F.R. 727.-203(b)(2). The Board based its decision primarily on the report by Dr. Lapp which it found had been erroneously discounted by the AU. Indeed, the Board concluded that Dr. Lapp’s report was sufficient for rebuttal because it stood “uncontradicted” and “uncontroverted”.
 

 II.
 

 The scope of appellate review for decisions of the Benefits Review Board is set forth in the Longshoremen’s and Harbor Workers’ Compensation Act, which provides that the “findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole.” 33 U.S.C. § 921(b)(3), incorporated by 30 U.S.C. § 932(a). This standard of review is also clearly expressed in the Department of Labor Regulations. 20 C.F.R. 802.301.
 

 In Beavan’s case, a rebuttable presumption of total disability from coal workers’ pneumoconiosis arises from two independent factors. First, the x-ray taken during the 1978 examination was interpreted as positive by Dr. N.J. Jennings, a Board certified radiologist and “B-reader”. 20 C.F.R. 727.203(a)(1). Dr. Jennings was the only B-reader to examine the x-ray evidence in the case. Second, the arterial blood gas study done by Dr. Strimlan produced results that were clearly sufficient to establish a presumption of total disability. 20 C.F.R. 727.203(a)(3).
 

 Bethlehem urges that the medical evidence is sufficient to rebut the presumption of total disability pursuant to 20 C.F.R. 727.203(b)(2). That section provides that the presumption of total disability due to pneumoconiosis can be rebutted by medical evidence which shows the individual is still capable of working in the mines.
 
 Director, OWCP v. Beatrice Pocahontas Co.,
 
 698 F.2d 680, 683 (4 Cir.1983). However, once the interim presumption is established by a qualifying diagnosis from
 
 either
 
 x-rays, blood gas studies, or ventilatory function tests, “a miner’s failure to satisfy the remaining tests [for a qualifying diagnosis] does not rebut [it].”
 
 Hampton v. United States Department of Labor Benefits Review Board,
 
 678 F.2d 506, 508 (4 Cir.1982).
 
 See also Whicker v. United States Department of Labor Benefits Review Board,
 
 733 F.2d 346, 348 (4 Cir.1984) (specifically applying the
 
 Hampton
 
 holding to rebuttal under 20 C.F.R. 727.203(b)(2)). Nevertheless, the Benefits Review Board ruled that Bethlehem had effectively rebutted the presumption finding Dr. Lapp’s 1978 report constituted a clear and uncontradicted medical report establishing the absence of disability.
 

 . Close examination reveals that the Board’s conclusions are demonstrably erroneous. Dr. Lapp’s opinion was based on the results of a chest x-ray which established that Beavan has pneumoconiosis, ventilatory function tests which he interpreted to be within normal limits, an occupational history, and a physical examination. Beavan was examined eleven months later by Dr. Strimlan who conducted largely the same tests as well as an arterial
 
 *692
 
 blood gas test. The results were inconsistent. While Dr. Strimlan found no x-ray evidence of pneumoconiosis, the ventilatory tests and arterial blood gas study revealed a severe, totally disabling chronic obstructive pulmonary disease. Without explanation, this impairment was attributed to Beavan’s former cigarette smoking.
 

 Bethlehem, of course, makes much of the fact that Dr. Strimlan recanted his diagnosis of disability a year later when confronted with Dr. Lapp’s conclusions that the patient was not exerting maximal effort on earlier ventilatory tests. However, Strim-lan’s retraction was equivocal: “this dilemma [the large variance in results of the ventilatory function studies conducted one year apart] could ... be settled ... if [Beavan] ... had repeated pulmonary function studies which were again normal.” Perhaps even more telling, Dr. Strimlan, in his second opinion did not address his earlier arterial blood gas study results which independently established disability. Dr. Lapp did not conduct a blood gas test and he was, obviously, not aware of the results of Dr. Strimlan’s test conducted a year after Lapp’s examination. The arterial blood gas test results undermine Dr. Lapp’s conclusions which were based only on ventilatory function tests. Dr. Strim-lan’s second opinion, agreeing with Dr. Lapp’s original conclusions, is neither documented nor reasoned because it does not address the blood gas test result which independently establishes severe pulmonary impairment.
 

 Similarly, the opinion of Dr. Kress, a non-examining physician, does not rebut the presumption of total disability because he only speculates about the inconsistencies in the objective evidence of disability and the causes of the abnormal blood gas test results. Dr. Kress’ conclusion that there was an absence of chest x-ray evidence of pneumoconiosis is demonstrably incorrect in light of Dr. Jennings’ 1978 positive reading.
 

 Thus, we think that the medical evidence is simply too speculative and inconsistent to amount to a clear and uncontradicted medical opinion that Beavan is still capable of working in the mines.
 
 Beatrice Pocahontas Co., supra.
 
 To the contrary, the arterial blood gas study remains clear and uncontradicted evidence that Beavan’s condition is disabling. Under these circumstances, the ALJ’s decision that Beavan was disabled is clearly supported by substantial evidence and Bethlehem has failed to adduce uncontradicted medical opinion sufficient for rebuttal.
 

 We reverse the Benefits Review Board and direct that a judgment be entered awarding Beavan benefits.
 

 REVERSED.