881 F.2d 1069
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Billy C. HALL, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.
 No. 88-2932.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 7, 1989.
Decided July 31, 1989.
 
 S.F. Raymond Smith, United Mine Workers of America, on brief for petitioner.
 Jerry G. Thorn, Acting Solicitor of Labor, Donald S. Shire, Associate Solicitor, Barbara J. Johnson, Counsel for Appellate Litigation, Roscoe C. Bryant, III, U.S. Department of Labor, Office of Solicitor, Office of Workers' Compensation Programs for respondents.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 In this black lung disability case the claimant, Billy Hall, appeals the ALJ's denial of his application for benefits. Because Supreme Court precedent defeats Hall's argument that the government is estopped from asserting that he lacks a "live" claim, we affirm the denial of benefits.
 
 I.
 Factual and Procedural Background
 
 2
 Claimant Billy Hall filed a claim for black lung benefits on June 25, 1973. The Social Security Administration ("SSA") denied the application on July 24, 1973. Pursuant to the Black Lung Benefits Reform Act of 1977, Hall elected to have his claim reviewed by the SSA in April, 1978. The SSA denied the claim a second time in September, 1978, and then forwarded the file to the Department of Labor ("DOL") for further review under the Reform Act.
 
 
 3
 On January 8, 1980, the DOL Deputy commissioner made an initial finding that Hall was entitled to benefits, and named The New River Company as the operator responsible for these benefits. In May, 1980, the company accepted the initial finding of entitlement and on June 5, 1980 the Director, Office of Worker's Compensation Programs, issued a Decision and Order finding the claimant totally disabled, and awarding Hall benefits provided that he cease his coal mining employment within one year of the final date of the order, July 5, 1980. Hall did not quit his coal mine employment until April 7, 1982.
 
 
 4
 On December 3, 1982 the Director notified Hall that because he had not terminated his employment by July 5, 1981 his claim was denied pursuant to 20 C.F.R. 725.503A(b), the provision which governs the award of benefits to a "working miner." The Director also informed Hall that he would have to file a new claim in order to be entitled to any benefits. The DOL notified The New River Company on December 7, 1982 that it was relieved of responsibility for payment of any benefits to Hall, and that liability had been transferred to the Black Lung Disability Trust Fund pursuant to the 1981 Black Lung Act Amendments.
 
 
 5
 On January 13, 1983 the DOL sent Hall a letter providing further information on Hall's "rights as a denied claimant." The letter stated that Hall's claim had been reviewed under the 1977 Reform Act, and was denied because he was not totally disabled and because he was "doing his usual and customary coal mine employment." The letter further advised Hall that he had the right to submit additional evidence or to request a hearing. Hall requested a formal hearing on March 7, 1983. In preparation for this hearing, the Director had Hall undergo another physical examination by a government-selected physician.
 
 
 6
 The hearing was held on June 3, 1986 before ALJ Richard E. Huddleston, who found that Hall was totally disabled as a result of complicated pneumoconiosis. The ALJ denied benefits, however, after finding that Hall's failure to cease his coal mine employment by July 5, 1981 meant that his claim had been denied at that time. Additionally, because Hall had failed either to take any action to seek modification of the denial, as allowed by 20 C.F.R. 725.310, or to file a new application for benefits, no "live" claim was before the ALJ.
 
 
 7
 Hall appealed the ALJ's decision to the Benefits Review Board ("BRB"), which affirmed the ALJ's determination that benefits had to be denied under 20 C.F.R. 503A(b). Specifically, the BRB found both that Hall had failed to follow the requirements, set forth in the federal regulations, for a working miner to retain his eligibility for benefits, and that he had failed to request a modification of the automatic denial.
 
 II.
 Lack of a "Live" Claim
 
 8
 In reviewing a denial of benefits a federal court must determine whether the ALJ's decision is supported by substantial evidence and is in accordance with the law. 33 U.S.C. Sec. 921(b)(3); Beavan v. Bethlehem Mines Corp., 741 F.2d 689, 691 (4th Cir.1984). The ALJ held, and the government argues on appeal, that Hall's application for benefits was finally denied on July 5, 1981, under 20 C.F.R. 725.503A(a) and (b), which provide in relevant part:
 
 
 9
 (a) In the case of a claimant who is employed as a miner at the time of a final determination of such miner's eligibility for benefits, no benefits shall be payable unless: ... (2) the miner terminates his or her coal mine employment within 1 year from the date of the final determination of this claim.
 
 
 10
 (b) ... If the miner's employment continues for more than 1 year after a final determination of eligibility, such a determination shall be considered a denial of benefits on the basis of the miner's continued employment and the miner may seek benefits only as provided in Sec. 725.310 [governing modification of an award or denial of benefits], if applicable, or by filing a new claim under this part.
 
 
 11
 The modification provisions of the Black Lung Act state that modification proceedings can be initiated by either the DOL or the claimant. 20 C.F.R. 725.310(a). Those proceedings must be initiated within one year after the denial of the claim. Id. Thus, the ALJ also found that because no modification proceeding was begun by July 5, 1982, Hall had to file a new application in order to be awarded benefits.
 
 
 12
 Hall points out, however, that almost 18 months after his claim allegedly died, the Director transferred to the Trust Fund liability for any benefits Hall might be awarded. Appellant claims that this action, in conjunction with the letter written to him by the DOL in January, 1983, demonstrates that the government considered his claim to be "live" even after July 5, 1982. Nonetheless, the ALJ found that it is simply beyond the scope of the Director's power to unilaterally resurrect a claim which had automatically died pursuant to federal regulations and which, under those regulations, could not be acted upon further. We agree with this interpretation of the law.
 
 
 13
 Hall also asserts that the government should be estopped from arguing that Hall had no live claim, on the grounds that it treated the claim as viable and offered Hall the opportunity for a hearing on that claim. After granting Hall's request for a hearing, the government continued to treat Hall's claim as viable, and even compelled Hall to undergo a physical examination by a physician of their choice. Not until the government's physician diagnosed Hall as completely disabled did the Director assert that Hall's claim was dead.
 
 
 14
 The traditional elements of estoppel--a material misrepresentation by one party and a reasonable, detrimental reliance by the other--are present in this case. By issuing the January, 1983 letter and by proceeding with the administrative hearing, the government misrepresented to Hall that his original claim for benefits was still alive. Hall detrimentally relied on that misrepresentation, because continuing with this claim precluded him from filing a second application for benefits in 1983. Even if he eventually receives benefits as a result of any application filed in 1989, Hall still will receive no benefits for the period preceding 1989. Furthermore, Hall's reliance on the government's misrepresentation was undoubtedly reasonable. The DOL has the power to determine initially whether a claim is alive or dead and whether a claimant is entitled to further hearings on a previously denied application for benefits.
 
 
 15
 Under existing Supreme Court precedent, however, Hall's estoppel argument must fail. The Supreme Court has consistently held that "the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Services, 467 U.S. 51, 60, 104 S.Ct. 2218, 2226, 81 L.Ed.2d 42, 52 (1984). See also INS v. Hibi, 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7, 10, (1973) (per curiam); Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 383, 68 S.Ct. 1, 4, 92 L.Ed. 10, 14 (1947). While the Supreme Court has never outlined precisely what sort of conduct is necessary before the government can be estopped, its decision in Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam), forecloses estoppel in this case.
 
 
 16
 In June, 1974, the claimant-respondent in Hansen had orally inquired of an SSA field representative whether she was eligible for certain benefits under the Social Security Act. The field representative erroneously informed Hansen she was ineligible and, contrary to instructions in the SSA's Claims Manual, he neither recommended to Hansen that she file a written application nor explained to her the advantages of such an application. After learning in May, 1975 that she was in fact eligible for the benefits, Hansen filed a written application. She began receiving benefits and, pursuant to Social Security Income regulations she was also awarded retroactive benefits for the preceding 12 months. That award represented the maximum retroactive benefits allowed by the Act. Hansen, however, argued that she should also receive retroactive benefits for the 12 months preceding June, 1974, because of the SSA's misrepresentation that she was ineligible for benefits. The government argued that, under the Act, benefits were available only to one who had, among other things, filed a written application.
 
 
 17
 The Second Circuit awarded Ms. Hansen the disputed benefits on the grounds that the government was estopped, by the misconduct of the SSA agent, to deny that Ms. Hansen had not filed an application in June, 1974. The court stated that the government may be estopped "where (a) a procedural and not a substantive requirement is involved and (b) an internal procedural manual or guide or some other source of objective standards of conduct exists and supports an inference of misconduct by a government employee." Hansen v. Schweiker, 619 F.2d 942, 949 (2d Cir.1980).
 
 
 18
 On appeal the Supreme Court reversed the Second Circuit, primarily on the grounds that the regulations required a written application. Noting "the duty of all courts to observe the conditions defined by Congress for charging the public treasury," 450 U.S. 788, 101 S.Ct. at 1470, 67 L.Ed.2d at 689, the majority flatly stated that "[a] court is no more authorized to overlook the valid regulation requiring that an application be in writing than it is to overlook any other valid requirement for the receipt of benefits." 450 U.S. at 790, 101 S.Ct. at 1472, 67 L.Ed. at 690. Given the Hansen rationale, this court is not free to disregard 20 C.F.R. 725.503A and 725.310(a), and hold in favor of Hall on estoppel grounds.
 
 
 19
 Additionally, Hansen indicated that nothing short of affirmative misconduct by one of its employees could estop the government. 450 U.S. at 788-89, 101 S.Ct. at 1470, 67 L.Ed.2d at 689-90. The Court also found that Hansen had not detrimentally relied on the SSA's misrepresentation, because it caused neither action nor inaction on her part "that [she] could not correct at any time." 450 U.S. at 789, 101 S.Ct. at 1470, 67 L.Ed. at 690.
 
 
 20
 In this case there is little, if any, evidence of affirmative misconduct by the government. Furthermore, Hall can essentially "correct" his reliance on the government's actions in much the same way that Hansen could--by filing a new application. The fact that this later application will deprive claimant of some retroactive benefits is of no consequence under Hansen.
 
 
 21
 For the reasons set forth above the decision of the ALJ denying appellant black lung disability benefits is
 
 
 22
 AFFIRMED.