953 F.2d 637
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
June EDWARDS, on Behalf of Sam W. COLLINS, deceased, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 90-2228.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided Feb. 4, 1992.
 
 On Petition for Review of an Order of the Benefits Review Board. (88-3931-BLA)
 Argued: Deborah J. Schaaf, Johnson, Schaaf, Jones & Snelling, Chicago, Ill., for petitioner; Rodger Pitcairn, Office of the Solicitor, United States Department of Labor, Washington, D.C., for respondent.
 On Brief: Leslie Ann Jones, Johnson, Schaaf, Jones & Snelling, Chicago, Ill., for petitioner; Robert P. Davis, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Michael J. Denney, Counsel for Appellate Litigation, Office of the Solicitor, United States Department of Labor, Washington, D.C., for respondent.
 
 
 1
 Ben.Rev.Bd.
 
 
 2
 AFFIRMED.
 
 
 3
 Before WIDENER and SPROUSE, Circuit Judges, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 4
 This appeal arose originally from a dispute over the onset date for a black lung benefits award. The claimant, Collins, however, died before that issue was resolved and the case devolved into the issue of whether the claimant's former stepdaughter, June Edwards, could pursue the claim as an adopted child. Illinois law controls that question and the Administrative Law Judge (ALJ) determined factually that Collins had not impliedly contracted to adopt Edwards when she was a child as required by Illinois law and denied her application to be substituted as a claimant. Since that decision was supported by substantial evidence, we affirm.
 
 
 5
 * Sam Collins, a former West Virginia coal miner, began receiving payments, after an initial refusal of benefits, under the Black Lung Benefits Act[1] on April 1, 1977. He immediately appealed the commencement date, attempting to establish that he had contracted the disease earlier. On March 5, 1981, the Deputy Commissioner suggested that the onset of Collins' disease was December 1, 1976, and recommended a hearing. Unfortunately, the hearing was never held nor was the onset date issue resolved. Collins died on June 10, 1985.
 
 
 6
 June Edwards, claiming she was Collins' child through equitable adoption, attempted to pursue the matter. The Benefits Review Board ultimately denied her claim, affirming the ALJ's finding that she was not an adopted child under Illinois law. Both the ALJ and the Board declined to reach the onset date issue; we also find it unnecessary to do so.
 
 II
 
 7
 Sam Collins, Odessa Dorman Phillips, and her three-year-old daughter, June, lived as a family for five years before the marriage of Sam and Odessa in 1940 when June was eight. June was the legitimate daughter of Donald Phillips, who had abandoned her to the care of Collins. The Collins family lived in West Virginia, moving frequently as Sam looked for work in various mining towns. In 1946, the family moved to Chicago where Collins lived until his death and where June Edwards continues to reside.
 
 
 8
 At the hearing before the ALJ, June Edwards conceded that Collins never discussed adoption with her. She gave undisputed testimony, however, that Collins had treated her as a natural daughter. He bestowed upon her the many gestures of affection that accompany the relationship between a natural father and child. He was kind to her, insisted that she perform chores around the house and, on occasion, disciplined her. June saw her natural father only once after her mother's remarriage, when she was approximately ten years of age; it was then she realized that Collins was not her real father. Her natural father never offered or gave her any financial support. She lived in the same house with her mother and Collins and was known as June Collins; her school records, graduation certificate, and marriage license state that her name was June Collins. She used the name of Collins until she was married, in Collins' home, at the age of eighteen. During the early periods of her marriage, June Edwards returned with her children for periods of up to three months to reside temporarily with Collins. Collins helped her and her nine children financially during difficult periods. Their close relationship survived the divorce of Collins and Odessa and continued until his death. June Edwards related that she arranged his funeral, assumed the responsibility of disposing of his belongings, and inherited his car and watches.
 
 III
 
 9
 The parties agree that, under the regulations defining qualifications to receive black lung benefits due a deceased miner, the law of Illinois governs the issue of whether June Edwards is the child of Sam Collins.[2] The ALJ, applying Illinois law, found as a matter of fact that there was no contract on the part of Collins to adopt June Edwards and that therefore she could not be substituted as a claimant for the deceased Collins' benefits.
 
 
 10
 The Illinois Supreme Court developed the doctrine of implied contract to adopt in Weiss v. Beck, 115 N.E.2d 768 (Ill.1953). In Weiss, the court, while declining to accept the doctrine of equitable adoption, recognized that an oral contract to adopt could be established by clear and unequivocal evidence. It found that the evidence which it considered did not rise to that level and, inter alia, outlined the type of evidence necessary to establish an implied contract to adopt:
 
 
 11
 There have been nine decisions in Illinois courts involving the same issues presented upon this appeal. Of these nine cases, only three resulted in a decree enforcing the alleged agreement for adoption.... In each of these cases the proof included either a written memorandum of the alleged agreement to adopt found among the papers of the deceased foster parents, or the positive testimony of some surviving witness who was present and heard the making of the agreement to adopt. No such proof is found in the record of the instant case.
 
 
 12
 Weiss, 115 N.E.2d at 772 (citations omitted).
 
 
 13
 The Illinois Supreme Court further clarified the doctrine in Monahan v. Monahan, 153 N.E.2d 1 (Ill.1958). Affirming the lower court's holding that the facts and circumstances of that case were sufficient to establish an oral contract to adopt, it explained that Weiss does not stand "for the proposition that circumstantial evidence is insufficient to support a decree upholding an oral contract to adopt." Id. at 3. The court emphasized, however, that to be sufficient, circumstantial evidence must be tangible and positive. Id. If limited to parol testimony, it must be "clear and conclusive of the existence and terms of the contract, leaving no room for reasonable doubt." Id. It added that "the evidence in support of the alleged contract must be strong and compelling, and the evidence must not be readily harmonizable with any other theory." Id.
 
 
 14
 Edwards' principal argument here is that the ALJ required a greater standard of proof than that announced in Weiss and Monahan. We think not. Although, under Illinois law, circumstantial evidence of the behavior of the "parent" can be sufficient to establish an implied contract to adopt, the ALJ determined that the evidence produced by Edwards was not sufficient to prove that operative fact under the Illinois standard.
 
 
 15
 In our view, substantial evidence supports that finding. See Beavan v. Bethlehem Mines Corp., 741 F.2d 689, 691 (4th Cir.1984). Accordingly, the judgment of the Benefits Review Board is affirmed.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 30 U.S.C. § 901 et seq
 
 
 [2]
 The relevant regulation states:
 For purposes of a survivor's claim, an individual will be considered to be a child of a beneficiary if:
 (a) The courts of the State in which such beneficiary is domiciled (see [20 C.F.R.] § 725.231) would find, under the law they would apply in determining the devolution of the beneficiary's intestate personal property, that the individual is the beneficiary's child; or
 (b) Such individual is the legally adopted child of such beneficiary; or
 (c) Such individual is the stepchild of such beneficiary by reason of a valid marriage of such individual's parent or adopting parents to such beneficiary....
 
 
 [20]
 C.F.R. § 725.220
 The sole issue we consider is whether June Edwards qualified under subsection (a) since she concededly was not legally adopted and therefore subsection (b) cannot be applied. Subsection (c) is also inapposite because Collins and Edwards' mother were divorced in 1962; thus she was not the stepchild of Collins at the time of his death in 1985.