960 F.2d 148
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
VIRGINIA POCAHONTAS COAL COMPANY, Petitioner,
v.
Allena DOTSON, Widow of Clyde Dotson; Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 90-3184.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 7, 1992
Decided: April 20, 1992
 
 ARGUED: Douglas Allan Smoot, Jackson & Kelly, Charleston, West Virginia, for Petitioner. Gerald Francis Sharp, Browning, Morefield, Lamie & Sharp, Lebanon, Virginia, for Respondents.
 ON BRIEF: Ann B. Rembrandt, Jackson & Kelly, Charleston, West Virginia, for Petitioner. Matthew P. Levin, Barbara J. Johnson, United States Department of Labor Washington, D.C., for Respondent Director.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 This case arises from a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. ("the Act"). The Benefits Review Board ("the Board") affirmed a decision by an Administrative Law Judge ("ALJ") awarding benefits to Allena Dotson ("Allena"), widow of coal miner Clyde Dotson ("Clyde"). The responsible coal mine operator Virginia Pocahontas Company ("Pocahontas") appeals the decision to this court. We find substantial evidence in the record supporting the ALJ's decision, and thus deny Pocahontas' petition.
 
 I.
 
 2
 Clyde was a coal miner for more than 35 years, ending in 1982. Pocahontas is the last employer for whom Clyde worked for at least one year, and thus is the designated responsible coal mine operator under the Act. 20 C.F.R. § 725.492. Clyde applied for Black Lung Benefits to the United States Department of Labor on April 10, 1978. The Deputy Commissioner initially approved his claim on February 20, 1980, but Pocahontas appealed this determination to the Office of Administrative Law Judges. Clyde received an administrative hearing in Abingdon, Virginia in August 1986, eight years after he had applied for benefits. Clyde died four months after the hearing; his widow, Allena, became the claimant under the Act.
 
 
 3
 The ALJ issued a decision and order awarding benefits to Allena on June 27, 1988. The ALJ stated that he believed that the United States Department of Health, Education and Welfare interim adjudicatory rules for "part B" Black Lung claims filed prior to 1974, 20 C.F.R. § 410.490 ("HEW regulations"), applied to Allena's case. The ALJ also considered the case, in the alternative, under the United States Department of Labor interim regulations applicable to those miners filing for benefits between 1974 and 1980, 20 C.F.R. § 727.203 ("DOL regulations"). The ALJ held that Pocahontas did not meet its burden under the DOL regulations' subsection 727.203(b)(3) to show that coal mining did not cause Clyde's death or disability ("(b)(3) rebuttal") or subsection (b)(4) to show that Clyde did not have pneumoconiosis (black lung) ("(b)(4) rebuttal"), and thus Allena was entitled to benefits even if the DOL regulations applied.
 
 
 4
 Pocahontas appealed the decision to the Board. The Board affirmed the ALJ's award of benefits on April 25, 1990, finding that Allena met her burden of proving entitlement to benefits under what it agreed were the applicable HEW regulations. The Board did not consider the ALJ's alternative conclusion that, even if the DOL regulations applied, Allena would still be entitled to benefits, except to note that Pocahontas did not challenge on appeal the ALJ's findings concerning disability or any rebuttal opportunity except the DOL regulations' (b)(3) causation rebuttal.[1] Pocahontas moved for reconsideration of the Board's decision, and the Board denied reconsideration on October 4, 1990. Pocahontas appealed the Board's decision to this court, fourteen years after Clyde originally applied for benefits.
 
 II.
 
 5
 The scope of this court's appellate review of the Board is set forth in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(b)(3), incorporated by the Act at 30 U.S.C. § 932(a). The statute provides that findings of fact in the decision under review shall be conclusive if supported by substantial evidence in the record considered as a whole. See Beavan v. Bethlehem Mines Corp., 741 F.2d 689, 691 (4th Cir. 1984). "Substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In reviewing the ALJ's decision, the Board must accept the ALJ's findings if supported by substantial evidence. "That the facts may permit diverse inferences is immaterial. The administrative law judge alone is charged with the duty of selecting the inference which seems most reasonable and his choice, if supported by the evidence, may not be disturbed." Presley v. Tinsley Maintenance Serv., 529 F.2d 433, 436 (5th Cir. 1976). This court reviews the Board's decision, in turn, for errors of law and for its adherence to the statutory standards governing the Board's review of the ALJ's factual findings. See Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir. 1980).
 
 
 6
 We discuss first the Board's conclusion that the HEW regulations, not the DOL regulations, applied to Allena's case. On their face, the DOL regulations, applicable to cases filed between 1974 and 1980, applied to Clyde, who filed for benefits in 1978. Congress had stated in the 1978 amendments to the Act that the DOL regulations could "not be more restrictive than" the earlier HEW regulations. 30 U.S.C. § 902(f)(2). The Supreme Court in Pittston Coal Group v. Sebben, 488 U.S. 105 (1988), had upheld this court's determination in Broyles v. Director, OWCP, 824 F.2d 327 (4th Cir. 1987), that the DOL regulations were more restrictive than the HEW regulations, and therefore contrary to Congress' mandate, with respect to the ability of those miners who had less than ten years' employment in the mines to invoke the presumption of entitlement to benefits. See Sebben, 488 U.S. at 113; Pauley v. Bethenergy Mines, Inc., 115 L. Ed. 2d 604, 623 n.6 (1991) (discussing Sebben ). The Board in this case understandably read Broyles to strike down the DOL regulations in their entirety, so that the HEW regulations would apply to all cases filed before 1980. See Broyles, 824 F.2d at 329 (Congress intended that the HEW regulations' presumption apply to all claims filed prior to the issuance of permanent regulations in 1980). However, the Supreme Court explicitly upheld those portions of the DOL regulations relating to the employer's opportunity to rebut the presumption of benefits, the issue in this case. See Pauley v. Bethenergy Mines, Inc., 115 L. Ed. 2d 604 (1991).
 
 
 7
 The HEW regulations allow employers to rebut the presumption of pneumoconiosis, which Allena properly invoked through evidence that Clyde worked for more than ten years in the mines and her submission of Clyde's X-rays and autopsy report tending to show that he had pneumoconiosis. Pocahontas could rebut this presumption under the HEW regulations in two ways: by presenting evidence that (1) Clyde was doing his usual coal mine work or comparable and gainful work, or (2) he was able to do such work. 20 C.F.R.s 410.490(c)(1) & (2). The DOL regulations, by contrast, allow Pocahontas four rebuttal opportunities. It could rebut Clyde's presumption by showing that (1) Clyde was performing such work, (2) Clyde was able to perform such work, (3) Clyde's total disability or death did not arise in whole or in part out of coal mine employment, or (4) Clyde did not have pneumonoconiosis. 20 C.F.R. § 727.203(b)(1)-(4). The Court reasoned in Pauley that the DOL regulations' two additional rebuttal opportunities did not make the DOL regulations more restrictive than the HEW regulations, and thus in violation of Congress' mandate, because other sections of the HEW regulations provide the employer the same opportunities. See Pauley, 115 L. Ed. 2d at 626-28, 630. Thus, because the DOL regulations are not more restrictive than the HEW regulations, the DOL regulations are valid and must be applied to Allena's claim.
 
 
 8
 Because the DOL regulations apply to this case, the Board should have considered the ALJ's conclusions on the (b)(3) rebuttal issue. This issue was clearly before the Board, for Pocahontas argued at length before the Board and this court that the DOL regulations applied to Allena's case and that there was not substantial evidence in the record to support the ALJ's findings on (b)(3) rebuttal. It is Fourth Circuit law that a decision by the court under review "is not to be reversed if it has reached the correct result, even though the reason assigned by it may not be sustained." Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 603 F.2d 1073, 1093 (4th Cir. 1979); accord Brandenburg v. Seidel, 859 F.2d 1179, 1184 (4th Cir. 1988). The Board correctly affirmed the ALJ's award of benefits to Allena because, through independent review, we find that there was clearly substantial evidence in the record to support the ALJ's conclusion that Pocahontas did not prove (b)(3) rebuttal, the only issue of which Pocahontas complained concerning the DOL regulations.[2]
 
 
 9
 Rebuttal under subsection (b)(3) is premised on the fact that the miner is totally disabled. Adkins v. Director, OWCP, 824 F.2d 287, 290 (4th Cir. 1987). "[O]nce the miner's disability is conceded, then the question arises whether that disability is unrelated to mine work." Sykes v. Director, OWCP, 812 F.2d 890, 894 (4th Cir. 1987). As we have explained:
 
 
 10
 Pneumoconiosis contracted during coal mine employment must be a causative factor in the miner's total disability, but it need not be the exclusive causative factor rendering the claimant totally disabled in order to be compensable under the Black Lung Act.
 
 
 11
 ....
 
 
 12
 The reality of coal mine employment is such that many physical and environmental factors may converge to produce a totally disabling respiratory or pulmonary impairment. The Secretary's rebuttal regulation acknowledges this reality and, consistent with the letter and spirit of the Black Lung Act and traditional workers' compensation principles, places the burden on the employer to disprove the causal relationship between coal mine employment and total disability once the claimant establishes the existence of a qualifying medical condition.
 
 
 13
 Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123-24 (4th Cir. 1984). In short, "the employer must affirmatively rule out a causal relationship between the miner's disability and coal mine employment in order to prevail under subsection (b)(3)." Bethlehem Mines Corp. v. Henderson, 939 F.2d 143, 151 (4th Cir. 1991) (emphasis added).
 
 
 14
 The issue here, therefore, is whether there is substantial evidence in the record to support the ALJ's finding that Pocahontas did not rule out the possibility that Clyde's coal mining employment contributed at least in part to his disability and death. While, as the ALJ indicated, the medical evidence is conflicting, there is substantial evidence supporting the ALJ's findings. Pocahontas has conceded the existence of Clyde's disability. As Clyde himself stated in the 1986 hearing before the ALJ:
 
 
 15
 I can't do anything [physical]. I can't even walk one hundred feet on level ground when I've got to stop and get my breath. I can't breathe. And also I had to give up my fishing and hunting. I don't do none of that anymore because I ain't got no breath to do it.... My boys come in and mow my yard. I'm unable to do any chores.
 
 
 16
 J.A. 174. The ALJ considered the views of a number of doctors that Clyde's coal mine employment contributed to this disability. Dr. Berry examined Clyde on April 13, 1978, and found that he had moderate chronic obstructive pulmonary disease due to dust exposure from coal mine employment. Dr. Modi examined Clyde on August 24, 1984, and concluded that he suffered from "[i]nterstitial pulmonary fibrosis, secondary to exposure to coal dust, causing coal worker's pneumoconiosis." J.A. 86. Dr. Modi also stated after Clyde's death that his "lung condition would have been his downfall problem" if he didn't die of heart disease. J.A. 320. Clyde's death certificate, prepared by Dr. Hess, stated that soft coalworker's pneumoconiosis was a significant condition contributing to Clyde's death. Dr. Abrenio conducted an autopsy of Clyde on December 31, 1986, and found simple coal worker's pneumoconiosis from an examination of the lung. Dr. Abrenio also found the presence of anthracotic pigment deposition, which comes from coal dust. Dr. Buddington reviewed the autopsy study and agreed with Dr. Abrenio's findings. Dr. Buddington wrote that "these changes of coalworkers' pneumoconiosis are not the immediate cause of the patient's demise. I do feel that these changes of coalworkers' pneumoconiosis probably contributed to the patient's demise." J.A. 322. The ALJ explicitly considered Pocahontas' evidence to the contrary, and we cannot find that the ALJ erred in finding that this evidence did not affirmatively rule out the possibility of a causal relationship between Clyde's disability and his 35 years of coal mine employment.
 
 III.
 
 17
 For the aforementioned reasons, Pocahontas' petition to review the Board's order awarding benefits to Allena Dotson based on her late husband Clyde's coal mine employment is hereby
 
 
 18
 DENIED.
 
 
 
 [1]
 Pocahontas could not have utilized DOL regulations' (b)(4) rebuttal in any case because Clyde correctly invoked the total disability presumption under section 727.203(a)(1) (X-ray or autopsy establishes existence of pneumoconiosis). See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 150 (1987)
 
 
 [2]
 Because we find that there is substantial evidence in the record supporting the ALJ's determination, there would be no point in remanding the case to the Board to make the exact same determination. The Board's error could therefore also be considered harmless error. See Sahara Coal Co. v. Director, OWCP, 946 F.2d 554, 558 (7th Cir. 1991) (holding harmless error doctrine applicable to judicial review of ALJ action in Black Lung cases; "If the outcome of a remand is foreordained, we need not order one."); Newell v. Director, OWCP, 933 F.2d 510, 512 (7th Cir. 1991) (Black Lung case; "While the regulations do not specifically provide us with grounds to hold an ALJ's error harmless, we have not been reluctant to rely on harmless error when a remand would be futile (and costly).")